**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Garcia Zenas Wilson,<br><br>Plaintiff,<br><br>v.<br><br>Nurse April Roberts; Nurse Lannan; Nurse Destini Williams; Nurse T. Harris; Nurse Evans; Nurse Practitioner Collins; Greenville County Detention Center Nursing Staff; Sgt. A. Reed; Scotty Bodiford; Holister; Stowers; Dr. Morgan Andrejcheck; Dr. Robert B. Bonanno; Dr. Jackson Moorefield; Dr. John Reed; Jessica Lauren Simpson; Dr. Yamini Chavon; Dr. Priya Harper; Dr. Elizabeth Page Bridges; Dr. Austin Countess; Dr. Kristin Schickel; Dr. Natalie Rech; Nurse Austin Molley; Nurse Addi; Nurse Julianna Wright; Nurse Suzi G.; Nurse Johnny M.; Nurse Andrew R.; Nurse Tiffany M.; Ortho Physical Therapy Nurse; Nurse Bannister; Administrators of Greenville County Detention Center; and Greenville Memorial Prisma Hospital Staff,<br><br>Defendants. | Case No. 2:26-cv-00299-RMG-MGB<br><br>**REPORT AND RECOMMENDATION** |

Garcia Zenas Wilson ("Plaintiff"), a pretrial detainee proceeding *pro se* and *in forma pauperis*, brings this civil action alleging unconstitutional medical treatment while detained at the Greenville County Detention Center ("GCDC") pursuant to 42 U.S.C. § 1983. Under 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) (D.S.C.), the undersigned is authorized to review this case and submit findings and recommendations to the assigned United States District Judge. For the reasons discussed below, the undersigned recommends that this action be partially dismissed.

**BACKGROUND**

Upon reviewing the initial filings in this matter, the undersigned entered an order notifying Plaintiff that his action was subject to summary dismissal for failure to state a claim upon which relief may be granted. (Dkt. No. 6.) In light of Plaintiff's *pro se* status, however, the undersigned afforded him twenty-one days, plus three days for mail time, to submit an amended pleading that cured the deficiencies identified in his Complaint. The undersigned emphasized that if Plaintiff filed an amended pleading, it would completely replace the original Complaint and render it of no legal effect. (*Id.* at 5.) In keeping with the undersigned's instructions, Plaintiff then filed an Amended Complaint (Dkt. No. 10), which now supersedes the original Complaint and governs the scope of the following initial review and this case.

According to the Amended Complaint, Plaintiff was bitten by a spider on his right knee while confined at GCDC. (Dkt. No. 10 at 1.) He alerted the jail's medical staff "via request on the jail's kiosk system" and was "seen" by Nurse T. Harris a few days later. (*Id.*) Despite "visible swelling on the knee area," Nurse Harris told Plaintiff that she could only give him "some Benadryl." (*Id.*) When the swelling worsened, Plaintiff placed another kiosk request and was evaluated by Nurse Destini Williams, "who also told Plaintiff the same as Nurse Harris and also did nothing." (*Id.*) Plaintiff then filed a grievance directed to "the head medical staff Nurse Evans and Nurse April Roberts, who Plaintiff never heard from." (*Id.*) When he tried to file another grievance, the kiosk "blocked" his request because he had "reached his limit." (*Id.*)

The swelling in Plaintiff's leg eventually reached a point where he could no longer walk. (*Id.*) At the direction of Sergeant A. Reed, Plaintiff visited Nurse Lannan, who told Plaintiff that "the meds [he] was receiving [were] all [he] needed at the time." (*Id.*) Both Nurse Lannan and Sergeant Reed reassured Plaintiff that "they would alert staff and also medical about [his] situation," and if his condition worsened, he could "speak to officers on the next shift and they [would] already know to

alert medical who would know to give [him] the antibiotics." (*Id.* at 1–3.) Later that night, Plaintiff was "seen" by Nurse Practitioner Collins, who thought Plaintiff's leg needed to be "drained." (*Id.* at 3.) Nurse Practitioner Collins had to go home, so he sent Plaintiff to see Nurse McDaniel, who in turn sent Plaintiff to the emergency room at Prisma Health Greenville Memorial Hospital. (*Id.*)

Upon arriving at the hospital, Plaintiff was seen by several doctors and received intravenous antibiotics. (*Id.*) He later received "another type of antibiotic" because the initial antibiotic "wasn't working." (*Id.*) He was then seen by orthopedic surgeons "who felt a bedside drainage was necessary due to the amount of infection." (*Id.*) Following the drainage, "these doctors told [Plaintiff he would] have to have surgery in order to remove the remaining infection that was between the knee and joint." (*Id.*) Despite being told that he would be prepped for surgery, Plaintiff claims he was instead placed on a different type of antibiotic and discharged from the hospital with a non-intravenous antibiotic, oxytocin, a walker, and a wheelchair. (*Id.*) Plaintiff eventually learned that the orthopedic surgeons cancelled his surgery "due to the need of bedspace." (*Id.* at 4.)

After returning to GCDC, Plaintiff "was sent to male housing" for about four days. (*Id.*) During those four days, Plaintiff states that he never received the oxycontin prescribed by the hospital, and Nurse Practitioner Collins apparently told him that he "had to get out of the wheelchair." (*Id.*) Plaintiff was then "moved to isolation as a gesture of punishment by Nurse Practitioner Collins and Administrative Nurses April Roberts and Evans. This was for [Plaintiff] grieving and making complaints because [he] wasn't receiving anything for pain." (*Id.*)

Plaintiff's leg apparently remained swollen, but he was not "scheduled for any follow ups by the hospital." (*Id.*) His family "called the hospital making complaints and grievances," at which point "they sent two doctors . . . to see why [Plaintiff's] leg and knee [were] still so swollen." (*Id.*) Upon examination, the doctors from the hospital found that Plaintiff was at risk of experiencing a blood clot and directed that he be transported to the emergency room immediately for an ultrasound. (*Id.*)

When Plaintiff arrived at Prisma Health Greenville Memorial Hospital, the staff "didn't know anything of [him] getting an ultrasound" and instead administered a "24-hour shot for blood clots" before discharging him. (*Id.*) Several days later, Plaintiff received an ultrasound "at another part of Greenville Memorial Prisma Hospital" by a nurse who told him that "medical negligence is what caused [his] leg and knee to get that bad." (*Id.*) Plaintiff proceeded to take baby aspirin "as a blood thinner for weeks," but was never told if he "actually had a blood clot." (*Id.*)

Plaintiff claims that he had been in "isolation" for one month when Nurse Practitioner Collins informed him that he could "either walk without [his] wheelchair or walker or be placed in a holding cell in booking at the jail." (*Id.*) Plaintiff chose to keep his wheelchair and was therefore moved to a holding cell for four days, where he stopped receiving his pain medication and antibiotics. (*Id.*) Nurse Bannister came to see Plaintiff and told him that while the jail did not offer physical therapy, he needed to "continue to work on [his] leg [himself]" so that he could "get [himself] able to be walking again." (*Id.*) Plaintiff claims that in order to "get out [of] the bad conditions of the cell [he] was in[,] [he] was forced by Administration and Medical Administrators Nurse April Roberts and Nurse Evans[,] also the Jail Administrators Scotty Bodiford, Holister, and Stowers all knew [his] situation due to [him] complaining and grieving . . . but yet [he] was forced to give up [his] wheelchair and walker." (*Id.*) Despite relinquishing his wheelchair and walker, Plaintiff claims he was further punished by being transferred to a "high max custody dorm." (*Id.*)

Based on the above, Plaintiff claims that Defendants violated his constitutional right to adequate medical care under the Due Process Clause.[1] (*Id.* at 6.) More specifically, Plaintiff argues that "while a single instance of medical care denied or delayed, viewed in isolation may appear to be

---

[1] Although Plaintiff briefly references Title III of the Americans with Disabilities Act, noting that places of "public accommodation" are prohibited from discrimination "on the basis of disability," he does not appear to raise Title III a cause of action against any specific defendants here. (Dkt. No. 10 at 5.) The Amended Complaint also contains an isolated reference to "medical professional liability" (*id.* at 6), but once again, the pleading does not expressly raise any such cause of action.

the product of mere negligence[,] repeated examples of such treatment indicate a deliberate indifference." (*Id.* at 5.) In support, he references his initial evaluations with Nurses Harris, Williams, and Lannan and their alleged refusal to provide him with antibiotics; Nurse Practitioner Collins' purported denial or delay of Plaintiff's medications following his hospital visit; and Nurse Practitioner Collins' demand that Plaintiff stop using his wheelchair. Plaintiff also notes that Nurses Evans and Roberts "knew of [his] serious medical condition situation being aware by [him] as well as [his] family calling and emails along with [his] grievances and complaints," but still denied him "proper medical treatment" in "breach of protocols governing medical standards." (*Id.*) Plaintiff further alleges that the hospital staff knew his "body would continue to suffer from the infection" without surgery and committed "willful negligence" by "not doing the proper surgery needed." (*Id.* at 6.) With respect to relief, Plaintiff seeks damages.

## LEGAL STANDARD

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Amended Complaint pursuant to the procedural provisions of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996). The Complaint has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit, and is also governed by 28 U.S.C. § 1915A, which requires the court to review a complaint filed by a prisoner that seeks redress from a governmental entity or officer or employee of a governmental entity.

To protect against possible abuses, the court must dismiss any prisoner complaints, or portions of complaints, that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also id.* § 1915A(b). A complaint is frivolous if it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). A claim based on a meritless legal

theory may be dismissed *sua sponte* "at any time" under § 1915(e)(2)(B). *Neitzke v. Williams*, 490 U.S. 319, 324–25 (1989). The United States Supreme Court has explained that the statute "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits." *Id.* at 326.

As to failure to state a claim, a complaint filed in federal court must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" as required under Rule 8(a)(2) of the Federal Rules of Civil Procedure. To satisfy this standard, a plaintiff must do more than make conclusory statements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the court need not accept as true a complaint's legal conclusions). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. When "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), the complaint fails to state a claim.

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal court is therefore charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure to allege facts that set forth a cognizable claim under Rule 8(a)(2). *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990); *see also Iqbal*, 556 U.S. at 684 (outlining pleading requirements under Rule 8, Fed. R. Civ. P., for "all civil actions").

**DISCUSSION**

A civil action under 42 U.S.C. § 1983 provides "a private right of action to vindicate violations of rights, privileges, or immunities secured by the Constitution and laws of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). To state a claim to relief under § 1983, the plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). As discussed above, the Amended Complaint alleges violations of Plaintiff's right to adequate medical care as a pretrial detainee under the Due Process Clause of the Fourteenth Amendment. (Dkt. No. 10 at 6.) Unfortunately, despite the opportunity to amend his allegations, Plaintiff's Amended Complaint still fails to state an actionable constitutional violation under § 1983 against certain defendants.

At the outset, courts have routinely held that "inanimate objects such as buildings, facilities, and grounds" do not qualify as "persons" amenable to suit under § 1983. *Sumpter v. Georgetown Cty. Det. Ctr.*, No. 0:20-cv-1770-JMC-PJG, 2020 WL 3060395, at *2 (D.S.C. June 8, 2020). Thus, the Greenville County Detention Center does not constitute a "person" for purposes of § 1983, regardless of whether Plaintiff refers to the physical building or the staff and collection of officials it houses, and any such claims are therefore subject to dismissal. *See Capers v. Hernandez*, No. 9:23-cv-6821-BHH-MGB, 2024 WL 1363816, at *4 (D.S.C. Feb. 9, 2024), *adopted*, 2024 WL 1349260 (D.S.C. Mar. 29, 2024).

Similarly, Plaintiff cannot raise any actionable claims against "Greenville County Detention Center Nursing Staff" or "Greenville Memorial Prisma Hospital Staff" because vague groups of unidentified individuals also do not constitute "persons" for purposes of § 1983. (Dkt. No. 6 at 4.) *See Barnes v. Bakersville Corr. Ctr. Med. Staff*, No. 3:07-cv-195, 2008 WL 2564779 (E.D. Va. June 25, 2008) (holding that use of the term "staff" or the equivalent as a name for alleged defendants,

without the naming of specific staff members, is not adequate to state a claim against a "person" as required under § 1983); *Hayes v. Florence Cnty. Det. Ctr. Pers.*, No. 1:21-cv-1549-JFA-SVH, 2021 WL 2227991, at *2 (D.S.C. June 2, 2021) (same).

With respect to the individual defendants in this action, the undersigned first addresses Plaintiff's claims against the healthcare providers at Prisma Health Greenville Memorial Hospital: Dr. Morgan Andrejcheck, Dr. Robert B. Bonanno, Dr. Jackson Moorefield, Dr. John Reed, Jessica Lauren Simpson, Dr. Yamini Chavon, Dr. Priya Harper, Dr. Elizabeth Page Bridges, Dr. Austin Countess, Dr. Kristin Schickel, Dr. Natalie Rech, Nurse Austin Molley, Nurse Addi, Nurse Julianna Wright, Nurse Suzi G., Nurse Johnny M., Nurse Andrew R., and Nurse Tiffany M. (*See* Dkt. No. 10 at 3–4.) As the undersigned previously explained to Plaintiff (Dkt. No. 6 at 3–4), the conduct at issue in this case must be "fairly attributable" to the state; purely private conduct, no matter how wrongful, injurious, fraudulent, or discriminatory, does not provide a basis for action under § 1983. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936–39 (1982).

While "[t]he Supreme Court has concluded, in the prison context, that private individuals who contract with the state to provide services to inmates can, in some circumstances, be considered state actors," *Buchanan v. JumpStart S.C.*, No. 1:21-cv-385-DCN-SVH, 2022 WL 624794, at *15 (D.S.C. Mar. 2, 2022), there is no indication that the named healthcare providers contracted with GCDC to administer medical care to prisoners, nor does Plaintiff allege such. Rather, it seems they were simply assigned as part of Plaintiff's care team during his stay at the hospital and subsequent hospital treatments. *See McIlwain v. Prince William Hosp.*, 774 F. Supp. 986, 989 (E.D. Va. 1991) ("A hospital's mere acceptance of a prison inmate for emergency care does not transform the hospital into a state actor."). These claims are therefore subject to summary dismissal.

Turning to the employees at GCDC (Nurses Roberts, Lannan, Williams, Harris, Evans and Bannister; Nurse Practitioner Collins; Sergeant Reed; and Jail Administrators Bodiford, Holister and

Stowers), to show inadequate medical treatment in violation of the Fourteenth Amendment, "a pretrial detainee must plead that (1) he had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023). Under this standard, the plaintiff need not show "that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id.* Instead, it is sufficient to show that the defendant's action or inaction was "objectively unreasonable." *See id.* (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). Nevertheless, negligence is insufficient to establish a constitutional violation. *See id.* at 611–12.

With respect to Nurses Harris, Williams, and Lannan, there is no indication that these individuals denied Plaintiff medical treatment or failed to act reasonably in response to his condition. Rather, they all examined Plaintiff and separately concluded that the appropriate course of action was to provide him with Benedryl. (Dkt. No. 10 at 1.) Nurse Lannan informed Plaintiff that if his swelling worsened, medical staff would take further action and prescribe antibiotics at that time. (*Id.* at 1–3.) While Plaintiff may argue that these healthcare providers should have prescribed him antibiotics at his initial examination, "[a] claim concerning a mere disagreement between an inmate and medical personnel regarding diagnosis or course of treatment" generally does not implicate a constitutional violation. *Pryor v. Chestnut*, No. 7:23-cv-541, 2024 WL 3423226, at *3 (W.D. Va. July 16, 2024). Moreover, where medical personnel examine and diagnose a patient, "an error in judgment" generally does not amount to a constitutional violation. *See id.* (finding that such "acts or omissions" do not "constitute a constitutional deprivation that is redressable under § 1983") (internal citations omitted).

Indeed, when medical personnel "fail to live up to expectations," any claims of "what could or should have been done" are "more naturally described as negligence." *Koon v. North Carolina*, 50 F.4th 398, 406–07 (4th Cir. 2022); *see also Lewis v. Angelone*, 926 F. Supp. 69, 74 (W.D. Va. 1996) (noting that where "medical personnel misdiagnosed or mistreated [a] plaintiff's condition, such a claim arises under state medical malpractice law and is not cognizable under § 1983."). Thus, Plaintiff's claims against Nurses Harris, Williams, and Lannan remain subject to summary dismissal. (Dkt. No. 6 at 4–5.)

The undersigned further notes that with respect to Sergeant Reed, non-medical personnel are generally "entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment that the medical personnel [deem] necessary and appropriate for the prisoner." *Staton v. Arcer*, No. 8:22-cv-2545-BHH-JDA, 2023 WL 5338037, at *6 (D.S.C. July 31, 2023), *adopted*, 2023 WL 5333286 (D.S.C. Aug. 18, 2023). Consequently, as the undersigned previously explained (Dkt. No. 6 at 5), Plaintiff cannot demonstrate a constitutional violation based on Sergeant Reed's reliance on Nurse Lannan's medical assessment that Benadryl was sufficient to treat Plaintiff's condition.

With respect to Nurse Bannister, the Amended Complaint simply states that he encouraged Plaintiff to "continue to work on [his] leg" so that he could "get [himself] able to be walking again." (Dkt. No. 10 at 4.) While Plaintiff seems to suggest that he would have benefited from personal physical therapy, there is no indication that Nurse Bannister had any authority over GCDC's lack of internal physical therapy options, nor does Plaintiff state that he was prescribed outside physical therapy sessions. To that end, Nurse Bannister's advice that Plaintiff continue to strengthen his leg using his own exercises does not demonstrate an actionable deprivation of medical care on his part.

Notwithstanding the above, the undersigned finds that Plaintiff's allegations regarding the denial or delay of his pain medication and antibiotics and the eventual removal of his wheelchair

(Dkt. No. 10 at 4–5) are sufficient to state plausible claims of inadequate medical care against Nurses Roberts and Evans and Nurse Practitioner Collins.[2] However, for the same reasons discussed above, the undersigned finds that to the extent Jail Administrators Bodiford, Holister and Stowers were involved in the removal of Plaintiff's wheelchair—which appears to be the primary allegation against them (Dkt. No. 10 at 4)—such conduct does not amount to a constitutional violation given that they apparently relied on the directives of medical personnel like Nurse Practitioner Collins.[3] Moreover, the doctrines of vicarious liability and *respondeat superior* generally are not applicable in § 1983 actions. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (noting that "Section 1983 will not support a claim based on a *respondeat superior* theory of liability").

## CONCLUSION

For the reasons discussed above, the undersigned finds that Plaintiff's claims against Nurse Roberts, Nurse Evans, and Nurse Practitioner Collins are sufficient to survive initial review. The remaining claims and defendants, however, are subject to summary dismissal for failure to state a claim upon which relief may be granted. The undersigned therefore **RECOMMENDS** that those claims be **DISMISSED** without further leave to amend, as Plaintiff has already had an opportunity to do so. *See Britt v. DeJoy*, 45 F.4th 790, 798 (4th Cir. 2022); *see also Workman v. Morrison Healthcare*, 724 F. App'x. 280, 281 (4th Cir. June 4, 2018).

**IT IS SO RECOMMENDED.**

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

August 13, 2026
Charleston, South Carolina

**The parties' attention is directed to an important notice on the following page.**

[2] The undersigned emphasizes that this conclusion does not speak to the merit or veracity of said allegations. Rather, these claims simply meet the minimum *pro se* pleading standard to survive initial review.

[3] Despite warning Plaintiff that his pleading must demonstrate that each Government-official defendant, through the official's own individual actions, violated the Constitution (Dkt. No. 6 at 4), the Amended Complaint's allegations against Jail Administrators Bodiford, Holister and Stowers remain relatively vague and cursory.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).